UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DELINA FERRETTI,<br><br>                    Plaintiff,<br><br>          v.<br><br>PFIZER INC.,<br><br>                    Defendant. | Case No.: 11-CV-04486<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO STRIKE |

Before the Court is Defendant Pfizer Inc.'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f) ("Mot."). ECF No. 14. Pursuant to Civil Local Rule 7-1(b), the Court finds these motions appropriate for determination without oral argument. Accordingly, the hearing on the motions set for March 1, 2012, is hereby VACATED. The case management conference set for March 1, 2012, at 1:30 p.m. remains as set. Having considered the parties' submissions and the relevant case law, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss and DENIES Defendant's motion to strike.

### I.     Factual Background

The following facts are taken from the original complaint and are assumed to be true for purposes of the instant motions. From April 2008 to September 16, 2010, Plaintiff Delina Ferretti ("Plaintiff") was employed as Director – Oncology for Pfizer Inc. ("Defendant"), a global research-

based pharmaceutical company. Compl. ¶¶ 4, 8. In this role, she served as "the Lead Clinical Protocol Manager, and was responsible for handling clinical operations for particular molecules." *Id.* ¶ 4. Her duties at Pfizer included, among other things, "overseeing data review performed by study managers and other team members for quality and training." *Id.* ¶ 6.

During her first year at Pfizer, Plaintiff worked primarily on the PanHER program, which was directed toward the clinical testing of PF-0299804, a molecule with promise as a cancer inhibitor drug. *Id.* ¶ 22.

In November 2008, Plaintiff noticed problems with the data related to the PanHER Phase I studies. *Id.* ¶ 25. Plaintiff, along with other Clinical Project Managers and study managers, reviewed the Phase 1 A5481001 study data. *Id.* Plaintiff "collated and reviewed all out-of-range clinical data, including electrocardiogram changes, prohibited medications, [and] all clinical changes from baseline." *Id.* Plaintiff alleges that "[i]n particular, there were over 200 incidences of Phase I study participants using prohibited medications, which can interfere with the test results and put the participants at risk. In addition, there were many instances of adverse events and changes from baseline that went unreported in the Investigator's Brochure and to the FDA, in violation of 21 C.F.R. sections 312.23(a)(5), 312.32, and 312.55." *Id.* Two of the Clinical Project Managers who investigated the data with Plaintiff agreed that the data was "dirty" and questionable. *Id.* ¶ 26.

Plaintiff immediately reported the abnormal Phase I study results to her supervisor, Bridget Rohmiller. *Id.* ¶ 27. "Plaintiff advised her superiors that the Phase I results should be thrown out because, *inter alia*, a majority of the individuals upon whom the drug was being tested were using medications prohibited under the study protocol. Because the prohibited medications could affect the test results, Plaintiff reported that she believed the study needed to be redone and that she could not in good conscience conduct Phase III testing on the product. Plaintiff, therefore, urged her supervisor, colleagues, and the Medical Monitor to redo the Phase I studies." *Id.* ¶ 1.

Plaintiff alleges that after the conclusion of Phase I trials, a Clinical Study Report ("CSR") is mandated to be written and provided to the FDA. *Id.* ¶ 29. To date, Defendant has not written a CSR for the Phase I PanHER trials. *Id.* In addition, the annual update of the Investigator's

Brochure mandated by the FDA to document new findings did not contain the issues of concern identified by Plaintiff and the other reviewers and colleagues. *Id.*

In or about February 2009, Plaintiff prepared a list of prohibited medications, which she provided to Dr. Louis Denis, the Director of Clinical Research for Pfizer Oncology. *Id.* ¶ 30. However, Dr. Denis refused to disseminate this information to the investigators and study sites, and issued a directive to Plaintiff to rescind any information previously sent. *Id.*

Plaintiff alleges that Pfizer "refused to do anything about the 'dirty' study results." *Id.* ¶ 31. Plaintiff claims that after reporting the defects in the Phase I trials, she was subjected to a hostile work environment which included being "vilified and disregarded," being "shut out" of certain meetings and being forced to run other meetings "without having time to prepare for them." *Id.*

In response to what Plaintiff perceived as a hostile working environment, and because of Defendant's unwillingness to remedy the defects in the study, Plaintiff asked to be transferred from the PanHER program in April 2009. Compl. ¶ 32, 34. This request was granted, and Plaintiff was placed under a new supervisor, Ms. Rashmi Gandhi. *Id.* ¶ 32.

Plaintiff alleges that under the supervision of Ms. Gandhi, Plaintiff was further subjected to "overt bias and unprofessional behavior." *Id.* ¶ 33. Specifically, Plaintiff's workload increased dramatically, and Ms. Gandhi refused to provide to Plaintiff the following: travel authorization for Plaintiff to meet with her team in person; a new, properly functioning computer; and reimbursement for job-related expenses, as previously authorized by Ms. Rohmiller. *Id.*

In or about December 2009, Plaintiff received a Performance Cycle Manager Review, which Plaintiff found to be "subjective, unsupported, and contain[ing] false and misleading information." *Id.* ¶ 34. In response to the review, Plaintiff noted that "she had asked to be transferred from the PanHER team because of her 'concerns about [good clinical practice], questionable data, clinical team inexperience, the takeover of Clinical Operation by the [Project Manager, Carole Klingerman,] and clinician, combined with retaliation by these team members when presented with serious issues." *Id.*

In or about March 2010, Plaintiff reported her concerns about study safety, unreported adverse events, and lack of a Clinical Study Report to the Pfizer Compliance Hotline. *Id.* ¶ 35.

Plaintiff also complained about the alleged retaliatory actions that had been taken against her and the alleged hostile work environment to which she was being subjected. *Id*. She also filed a complaint against Ms. Gandhi. *Id.* In response, Pfizer assigned Plaintiff to another supervisor, Ms. Stuart-Smith. *Id.*

In Plaintiff's April 28, 2010 Performance Improvement Plan ("PIP), Ms. Stuart-Smith noted that Plaintiff needed to improve her "follow through/accountability and communication." *Id.* ¶ 36. Plaintiff responded to and refuted each of these charges. *Id.* Plaintiff's July 7, 2010 PIP reiterated the need for Plaintiff to improve in these areas. *Id.* ¶ 37. Plaintiff again responded and refuted each charge. *Id.* Finally, on or about August 19, 2010, Defendant sent Plaintiff notice of her termination. *Id*. ¶ 38. Plaintiff's date of termination was September 16, 2010. *Id.*

On September 9, 2011, Plaintiff filed a complaint alleging: (1) violation of California Labor Code section 1102.5; (2) wrongful termination in violation of public policy; (3) intentional infliction of emotional distress ("IIED"); (4) breach of express or implied contract; and (5) breach of implied covenant of good faith and fair dealing. The case was reassigned to the undersigned judge on October 25, 2011. ECF No. 12. Defendant filed the instant motions on November 9, 2011. ECF No. 14. Plaintiff filed her opposition on December 7, 2011. ECF No. 18. Defendant filed its reply on December 28, 2011. ECF No. 20.

**II.   Legal Standards**

   **A. Motion to Dismiss Under Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). While "'detailed factual allegations'" are not required, a complaint must include sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to Plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "'formulaic recitation of the elements' of a cause of action." *Iqbal*, 129 S.Ct. at 1951 (quoting *Twombly*, 550 U.S. 555). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *accord Iqbal*, 129 S.Ct. at 1949–50.

### B. Leave to Amend Under Rule 15(a)

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### C. Motion to Strike Under Rule 12(f)

Pursuant to Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are generally disfavored." *Abney v. Alameida,* 334 F. Supp. 2d 1221, 1234 (S.D. Cal. 2004) (citing *Cairns v. Franklin Mint Co.,* 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from

litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

### III.  Discussion

As an initial matter, the Court notes that Plaintiff has agreed to dismiss her claim for breach of implied covenant of good faith and fair dealing. Joint Rule 26 Report, ECF No. 22, at 5. Accordingly, this claim is dismissed.

In the instant motion, Defendant moves to dismiss Plaintiff's claims for: (1) retaliation pursuant to California Labor Code section 1102.5(c); (2) wrongful termination in violation of public policy; and (3) intentional infliction of emotional distress ("IIED"). Further, Defendant moves to strike Plaintiff's request for attorneys' fees. The Court addresses each of these issues raised in Defendant's motions in turn.

### A.  Violation of California Whistleblower Protection Act

Plaintiff alleges that Defendant retaliated against her for refusing to participate in illegal activities, in violation of California Labor Code section 1102.5(c). Defendant moves to dismiss this claim on the grounds that: (1) Plaintiff has not exhausted her administrative remedy under California Labor Code section 98.7, and (2) that Plaintiff fails to plead a claim under section 1102.5(c). As discussed below, the Court finds that Plaintiff's failure to exhaust her administrative remedy under section 98.7 bars her section 1102.5(c) claim.

Section 1102.5 is a "whistle-blower" protection statute. The subsection relevant to this case states: "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." Cal. Lab. Code § 1102.5(c) (West 2011). Section 98.7 provides in turn: "Any person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division within six months after the occurrence of the violation."

As the California Supreme Court reaffirmed in *Campbell v. Regents of University of California*, 35 Cal. 4th 311 (2005), "the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the

courts will act." *Id.* at 321 (internal quotation marks and citation omitted). "In *Campbell*, the California Supreme Court expressly held that even though § 1102.5 is silent as to any requirement for administrative exhaustion, 'the past 60 years of California law on administrative remedies' nevertheless compelled the conclusion that a person bringing a claim under the section *is* subject to the exhaustion requirement." *Reynolds v. City and Cnty. of San Francisco*, Case No. 09-CV-0301-RS, 2011 WL 4808423, at *1 (N.D. Cal. Oct. 11, 2011) (quoting *Campbell*, 35 Cal. 4th at 329) (emphasis in original). Thus, under *Campbell*, because section 98.7 provides Plaintiff an administrative remedy for a violation of section 1102.5(c), Plaintiff was required to exhaust that remedy before filing her section 1102.5 claim in federal court. Plaintiff has not alleged that she filed a complaint with the Labor Commissioner. Although the *Campbell* court noted that there are some exceptions to the exhaustion requirement, 35 Cal. 4th at 322, Plaintiff has not alleged that any of those exceptions apply here.

Plaintiff cites *Lloyd v. County of Los Angeles*, 172 Cal. App. 4th 320 (Mar. 19, 2009), *Cates v. Division of Gambling & Control*, D046874, 2007 WL 702229, at * 11 (Cal. Ct. App. Mar. 8, 2007) (unpublished),[1] and *Creighton v. City of Livingston*, Case No. CV-F-08-1507 OWW/SMS, 2009 WL 3246825 (E.D. Cal. Oct. 7, 2009) for the proposition that, under California law, a plaintiff is not required to exhaust her administrative remedy under section 98.7 before filing a court action. Opp'n 6. For reasons that this Court finds persuasive, a sister court in this district has declined to follow *Lloyd* and *Creighton*. *See Dolis v. Bleum USA, Inc.*, Case No. 11-CV-2713-TEH, 2011 WL 4501979, at *2 (N.D. Cal. Sept. 28, 2011). As Judge Henderson stated, "this Court does not find *Lloyd* persuasive because the case made no attempt to reconcile *Campbell* or any of the cases cited therein that established the general rule requiring administrative exhaustion." *Id.* Judge Henderson also "disagree[d] with the narrow reading of *Campbell* adopted by the district court in *Creighton* . . . ." *Id.* at *2 n.1.

Indeed, since *Campbell* was decided in 2005, "courts in this district have uniformly held that claims under section 1102.5 must first be presented to the Labor Commissioner" before a court

---

[1] Pursuant to Civil Local Rule 3-4(e), Plaintiff is precluded from citing unpublished state court decisions. Accordingly, the Court does not consider *Cates*.

can consider them. *Reynolds*, 2011 WL 4808423, at *1 (citing *Carter v. Dep't of Corr.*, No. 09-CV-2413-JF, 2010 WL 2681905, at *9-10 (N.D. Cal. July 6, 2010)); *see also Sullivan v. Aramark Uniform and Career Apparel, Inc.*, Case No. 11-CV-2973-HRL, 2011 WL 3360006, at *6 (N.D. Cal. Aug. 3, 2011); *Hall v. Apartment Inv. and Mgmt. Co.*, Case No. 08-CV-3447-CW, 2008 WL 5396361, at *3 (N.D. Cal. Dec. 19, 2008); *Romaneck v. Deutsche Asset Mgmt.*, Case No. 05-CV-2473-TEH, 2006 WL 2385237, at *6 (N.D. Cal. Aug. 17, 2008). The Court agrees that this reading is most faithful to the California Supreme Court's decision in *Campbell*.

Thus, because Plaintiff has failed to allege that she exhausted her administrative remedy under section 98.7 before bringing her section 1102.5(c) claim in this Court and has not alleged any exception to the exhaustion requirement, the Court dismisses Plaintiff's 1102.5 retaliation claim. The dismissal is without prejudice because Plaintiff's complaint could possibly be cured by the allegation of other facts. *Lopez*, 203 F.3d at 1130.

### B. Wrongful Termination in Violation of California Public Policy

Plaintiff alleges that Defendant terminated Plaintiff's employment in response to Plaintiff's "protected disclosures" regarding Defendant's failure to properly conduct Phase I trials of the PanHER program and Plaintiff's refusal to participate in this program, in violation of the public policies set forth in California Labor Code sections 1102.5(c) and 6310(b). Compl. ¶¶ 47-50. Defendant argues that Plaintiff's alleged "protected disclosures" were made pursuant to and in the scope of Plaintiff's job duties and therefore cannot constitute "protected activity" as a matter of law for purposes of sections 1102.5(c) and 6310(b). Defendant also argues that Plaintiff's allegation that she refused to participate in illegal activity is conclusory and failed to give Defendant notice as to what conduct Defendant should investigate. Reply 7-8 n.4.

Wrongful termination in violation of public policy is a California common law cause of action providing that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167 (1980); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003). The public policy implicated must be "(1) delineated in either constitutional or statutory provisions; (2)

8

Case No.: 11-CV-04486
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO STRIKE

'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund*, 347 F.3d at 758 (quoting *City of Moorpark v. Super. Ct.*, 18 Cal. 4th 1143, 1159 (1998)). Unlike a statutory retaliation claim under section 1102.5(c), a common law wrongful termination in violation of public policy is not subject to the exhaustion requirement discussed in Section III.A above. *Stevenson*, 16 Cal. 4th at 905.

Where a plaintiff "relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition." *Stevenson*, 16 Cal. 4th at 904. Thus, Plaintiff's wrongful termination claim must follow the contours of claims under Labor Code section 1102.5(c) and 6310(b). The Court discusses these two statutory bases for Plaintiff's common law wrongful termination claim in turn.

### 1. Section 1102.5(c)

Violations of California Labor Code § 1102.5 can support a common law cause of action for wrongful termination in violation of public policy. *Scheu v. Charter Commc'ns, LLC*, Case No. 08-CV-02835-MMM, 2011 WL 3204672, at *20 (C.D. Cal. July 27, 2011) ("Violations of California Labor Code § 1102.5 . . . constitute public policy within the meaning of *Tameny* and its progeny."). Under section 1102.5(c), "an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

The parties agree, Mot. 7; Opp'n 9, that "to establish a *prima facie* case of retaliation under section 1102.5(c) a plaintiff must show: (1) that [s]he engaged in protected activity, (2) that [s]he was thereafter subjected to adverse employment action by h[er] employer, and (3) that there was a causal link between the protected activity and the adverse employment action." *Bursese v. Paypal, Inc.*, Case No. 06-CV-00636-RMW, 2007 WL 485984, at *8 (N.D. Cal. Feb. 12, 2007) (citing *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000)).

> a) Whether Plaintiff's Alleged Refusal to Participate in PanHER Constitutes "Protected Activity" Under Section 1102.5

Defendant's motion to dismiss relies exclusively on the first prong. Defendant argues that Plaintiff fails to allege that she engaged in "protected activity" under section 1102.5(c). The Court disagrees.

Defendant's motion focuses on the argument that Plaintiff's "protected disclosures" cannot be "protected activity" because these disclosures were part of Plaintiff's duties. Mot. 7-8. Even assuming that none of Plaintiff's "protected disclosures" exceeded the bounds of her official duties, Plaintiff alleges that she not only made "protected disclosures," Compl. ¶¶ 1, 27, 30, 31, but that she also refused to participate in illegal activity. As a sister court has noted in discussing section 1102.5(c), the California Legislature intended "to protect employees who refuse to act at the direction of their employer or refuse to participate in activities of an employer that would result in a violation of law." *Casissa v. First Republic Bank*, Case Nos. 09-CV-04129-CW, 2010 WL 2836896, at *2 (N.D. Cal. July 19, 2010) (quoting Act of Sept. 22, 2003, ch. 484, § 1, 2003 Cal. Legis. Serv. 484).

Specifically, Plaintiff alleges that she "advised her superiors that the Phase I results should be thrown out," "reported that she believed the study needed to be redone and that she could not in good conscience conduct Phase III testing on the product." *Id*. ¶ 1. Plaintiff also alleges that she "asked to be transferred from the PanHER program in April 2009" and that she subsequently told her supervisor, albeit after an unfavorable performance review, that she had asked to be transferred because of her "concerns about [good clinical practice]" and "questionable data." *Id*. ¶¶ 32, 34.

Plaintiff alleges that she refused to participate in the PanHER program because the program violated the following federal regulations for Investigational New Drugs ("IND"): 21 C.F.R. §§ 312.21(a)(1); 312.23(a)(5); 312.32; 312.50; and 312.55. Each of these five regulations will be discussed in turn.

First, Plaintiff alleges that defects in Defendant's PanHER Phase I trials prevented the design of well-controlled, scientifically valid, Phase II studies, in violation of 21 C.F.R. 312.21(a)(1). Compl. ¶ 41. 21 C.F.R. § 312.21(a)(1) states in relevant part: "During Phase 1, sufficient information about the drug's pharmacokinetics and pharmacological effects should be

10

Case No.: 11-CV-04486
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO STRIKE

obtained to permit the design of well-controlled, scientifically valid, Phase 2 studies." Plaintiff alleges that "there were over 200 incidences of Phase I study participants using prohibited medications, which can interfere with the test results and put the participants at risk." *Id.* ¶ 25. Defendant does not argue that the alleged activity complies with 21 C.F.R. § 312.21(a)(1). Moreover, taking the facts in the light most favorable to Plaintiff, Plaintiff has alleged that Defendant's PanHER program violated and would continue to violate 21 C.F.R. § 312.21(a)(1).

Second, Plaintiff alleges that Defendant failed to disclose or report certain information related to the PanHER program, as required by 21 C.F.R. § 312.50. This section requires a sponsor who intends to conduct a clinical investigation for a new drug ("sponsor") to: "select[] qualified investigators, provid[e] them with the information they need to conduct an investigation properly, ensur[e] proper monitoring of the investigation(s), ensur[e] that the investigation(s) is conducted in accordance with the general investigational plan and protocols contained in the IND, maintain[] an effective IND with respect to the investigations, and ensur[e] that FDA and all participating investigators are promptly informed of significant new adverse effects or risks with respect to the drug." Plaintiff alleges that in October or November 2008 "there were many instances of adverse events and changes from baseline that went unreported in the Investigator's Brochure and to the FDA." Compl. ¶ 25. Plaintiff alleges that at the conclusion of the Phase I trials, "the annual update to the Investigator's Brochure mandated by the FDA to document new findings did not contain the issues of concern defined by Plaintiff and the other reviewers and colleagues." *Id.* ¶ 29. Plaintiff also alleges that in February 2009, Plaintiff prepared a list of prohibited medications per protocol for certain PanHER trials, but that Dr. Denis "refused to disseminate this information to the investigators and study sites, and issued a directive to Plaintiff to rescind any information previously sent." *Id.* ¶ 30. Defendant does not argue that the alleged activity complies with 21 C.F.R. § 312.50. Moreover, taking the facts in the light most favorable to Plaintiff, Plaintiff has alleged that the PanHER program violated and would continue to violate 21 C.F.R. § 312.50.

Third, Plaintiff argues that Defendant has failed to disclose or report certain information related to the PanHER program, as required by 21 C.F.R. §§ 312.23(a)(5), 312.32(c)(1), and 312.55. 21 C.F.R. § 312.23(a)(5) requires a sponsor to submit an "investigator's brochure"

containing "[a] summary of information relating to safety and effectiveness in humans obtained from prior clinical studies . . ." and "[a] description of possible risks and side effects to be anticipated on the basis of prior experience with the drug under investigation or with related drugs, and of precautions or special monitoring to be done as part of the investigational use of the drug." Under 21 C.F.R. § 312.32(c)(1), a sponsor "must notify FDA and all participating investigators . . . in an IND safety report of potential serious risks, from clinical trials or any other source, as soon as possible, but in no case later than 15 calendar days after the sponsor determines that the information qualifies for reporting under paragraph (c)(1)(i), (c)(1)(ii), (c)(1)(iii), or (c)(1)(iv) of this section." Finally, under 21 C.F.R. § 313.55, a sponsor has a responsibility to give "each participating clinical investigator an investigator brochure containing the information described in § 312.23(a)(5)" and "keep each participating investigator informed of new observations discovered by or reported to the sponsor on the drug, particularly with respect to adverse effects and safe use." 21 C.F.R. § 312.55(a)-(b). Plaintiff alleges that Defendant "failed to disclose in the Investigator's Brochure and to the FDA a summary of information relating to safety and effectiveness in humans obtained from prior clinical studies; a description of possible risks and side effects to be anticipated on the basis of prior experience with the drug under investigation; and precautions or special monitoring to be done as part of the investigational use of the drug." Compl. ¶ 41. Defendant does not argue that the alleged activity complies with 21 C.F.R. §§ 312.23(a)(5), 312.32, and 312.55. Moreover, the specific allegations that support Plaintiff's claim that Defendant's PanHER program violated 21 C.F.R. § 312.50 also support the reasonable inference that Defendant's PanHER program also violated 21 C.F.R. §§ 312.23(a)(5), 312.32, and 312.55.

Thus, taking all the facts in the light most favorable to Plaintiff, as the Court must on a motion to dismiss, it is reasonable to infer that Plaintiff refused to participate in Defendant's PanHER program because Defendant's PanHER program violated and would continue to violate several federal IND regulations. "[R]efusing to participate in an activity that would result in a . . . violation or noncompliance with a . . . federal rule or regulation" is explicitly protected under California Labor Code section 1102.5(c). Thus, Plaintiff has alleged that she engaged in protected activity.

> b) Whether Plaintiff's Disclosures in the Scope of Employment Duties Precludes a Finding that Plaintiff Engaged in "Protected Activity"

Defendant argues that Plaintiff's activity is not protected because it was in the scope of her employment duties. Mot. 7. Defendant relies primarily on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir. 1996), for the proposition that a plaintiff who merely acts in furtherance of his or her job responsibilities does not engage in protected activities. The Court disagrees.

Defendant's reliance on *Garcetti*, holding that public employees do not engage in protected activity under the First Amendment when making statements "pursuant to their official duties," is misplaced. Here, Plaintiff is neither a public employee nor alleging that Defendant terminated her in retaliation for Plaintiff's exercise of her first amendment rights. Moreover, "[Defendant] fails to offer controlling authority that applies *Garcetti* to claims for retaliation under the California Labor Code against private employers." See *Muniz v. UPS, Inc.*, 731 F. Supp. 2d 961, 969 (N.D. Cal. 2010) (Wilken, J.).

*McKenzie* similarly does not control here. Courts in this district have found *McKenzie*, a retaliation case under the Fair Labor Standards Act, "persuasive" as to defining "protected activity" under California Labor Code section 1102.5. *See, e.g.*, *Muniz*, 731 F. Supp. 2d at 970. However, *McKenzie* does not bar Plaintiff's claim here. In *McKenzie*, the Tenth Circuit held that the employee's conduct was not protected activity because she was "merely performing her everyday duties as personnel director for the company" and she did not take "some action adverse to the company," which the court explained to be "the hallmark of protected activity." 94 F.3d at 1486. Here, while Plaintiff's raising concerns about the PanHER Phase I results may have been part of her job duties, a jury could construe her refusal "to accede to an alleged practice" of not complying with and masking violations of IND regulations by requesting to be transferred out of the program, "as a position adverse to [Defendant]." *Muniz*, 731 F. Supp. 2d at 969. Defendant's citation to *Lund v. Leprino Foods Co.*, No. Civ. S-06-0431-WBS, 2007 WL 1775474 (E.D. Cal. June 20, 2007), and *Luchetti v. Hershey Co.*, Case No. 08-CV-1629-SI, 2009 WL 2912524 (N.D. Cal. Sept. 9, 2009), is also unavailing. The plaintiffs in *Lund* and *Luchetti* did not submit evidence of taking any action adverse to the defendant at summary judgment and thus are inapposite.

Defendant's argument that Plaintiff has failed to allege that Defendant knew why Plaintiff requested the transfer, Reply 7-8 n.4, is also unpersuasive. Plaintiff alleges that she "advised her superiors that the Phase I results should be thrown out," "reported that she believed the study needed to be redone and that she could not in good conscience conduct Phase III testing on the product." *Id.* ¶ 1. Plaintiff also alleges that she "asked to be transferred from the PanHER program in April 2009," "[a]fter it became clear that Pfizer was unwilling to remedy the defects in the Phase I studies." *Id.* ¶ 32. Plaintiff subsequently told her supervisor, albeit after an unfavorable performance review, that Plaintiff asked to be transferred because of Plaintiff's "concerns about [good clinical practice]" and "questionable data." *Id.* ¶ 34. Thus, taking the facts in the light most favorable to Plaintiff, Plaintiff has alleged sufficient facts to draw the reasonable inference that Defendant had either actual or constructive notice that Plaintiff requested to be transferred because she refused to participate in illegal activity when Defendant terminated her in September 2010.

Accordingly, for the foregoing reasons, Defendant's motion to dismiss Plaintiff's wrongful termination claim in violation of public policy based on a violation of section 1102.5(c) is DENIED.

### 2. Section 6310(b)

Plaintiff's complaint also relies on California Labor Code section 6310(b) as a basis for her claim of wrongful termination in violation of public policy. Compl. ¶ 48. A claim for wrongful termination in violation of public policy may be based on a violation of California Labor Code section 6310. *See Freund v. Nycomed Amersham*, 347 F.3d 752, 759 (9th Cir. 2003) (citing *Hentzel v. Singer Co.*, 138 Cal. App. 3d 290, 298 (1982)); *see also Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*, 68 Cal. App. 4th 101, 109-10 (1998). Section 6310(b) provides, in relevant part: "Any employee who is discharged . . . because the employee has made a bona fide oral or written complaint to . . . his or her employer . . . of unsafe working conditions, or work practices, in his or her employment or place of employment . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer." Cal. Lab. Code § 6310(b). "The public policy behind § 6310 is . . . to prevent retaliation against those who in good faith report working conditions they believe to be unsafe." *Freund*, 347 F.3d at 759; *see*

*also Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 485 (2000) ("Labor Code section 6310 is part of California's statutory scheme for occupational safety.").

Here, Plaintiff has not alleged any facts showing that she reported *working conditions* that she believed to be unsafe. Plaintiff's complaint focuses exclusively on alleged violations of or noncompliance with federal IND regulations, not any statutes or regulations governing occupational safety. Moreover, Plaintiff's opposition brief does not even cite section 6310(b), and the portion of Plaintiff's opposition brief on wrongful termination is devoted entirely to section 1102.5. Opp'n 10-11. Thus, Plaintiff appears to concede the merits of Defendant's motion to dismiss as to Plaintiff's wrongful termination claim based on section 6310(b). Accordingly, Defendant's motion to dismiss as to Plaintiff's wrongful termination claim in violation of public policy based on a violation of section 6310(b) is GRANTED. Plaintiff's claim for wrongful termination based on a violation of section 6310(b) is dismissed without prejudice because Plaintiff's complaint could possibly be cured by the allegation of other facts. *Lopez*, 203 F.3d at 1130.

### C. Intentional Infliction of Emotional Distress ("IIED")

Under California law, the tort of IIED comprises three elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998).

The Court agrees with Defendant that Plaintiff has failed to plead sufficient facts to support her claim for IIED. The Court need not reach Defendant's argument that Defendant's alleged conduct is not "extreme or outrageous" as a matter of law, because the Court finds that Plaintiff has not alleged sufficient facts to support the element that Plaintiff suffered "severe or extreme emotional distress." Indeed, besides alleging that she had "concerns," Plaintiff has not alleged *any* facts to support her conclusory allegation that she suffered "severe emotional distress." Compl. ¶ 56. As discussed above, a formulaic recitation of the elements of a cause of action is insufficient to defeat a motion to dismiss for failure to state a claim. *See Iqbal*, 129 S.Ct. at 1949–51.

Accordingly, Plaintiff's IIED claim is dismissed. The dismissal is without prejudice because Plaintiff's complaint could possibly be cured by the allegation of other facts. *Lopez*, 203 F.3d at 1130.

### D. Motion to Strike Attorneys' Fees

Defendant moves to strike, pursuant to Federal Rule of Civil Procedure 12(f), Plaintiff's request for attorneys' fees under California Code of Civil Procedure ("C.C.P.") section 1021.5. Specifically, Defendant argues that Plaintiff's complaint does not seek enforcement of an important right affecting the public interest and thus attorneys' fees are not recoverable as a matter of law. Mot. 12. However, in *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), the Ninth Circuit held that "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis that it is precluded as a matter of law." *Id.* at 975-76. Accordingly, Defendant's Rule 12(f) motion to strike Plaintiff's claim for attorneys' fees under C.C.P. § 1021.5 is DENIED.

### IV. Conclusion

For the foregoing reasons, Defendant's Rule 12(b)(6) motion to dismiss is GRANTED, with leave to amend, as to Plaintiff's following claims: retaliation under California Labor Code section 1102.5(c); wrongful termination in violation of public policy predicated on a violation of California Labor Code section 6310(b); and IIED. Defendant's motion to dismiss is DENIED as to Plaintiff's claim of wrongful termination in violation of public policy predicated on a violation of California Labor Code section 1102.5(c). Defendant's Rule 12(f) motion to strike Plaintiff's request for attorneyśfees pursuant to C.C.P. § 1021.5 is DENIED. Plaintiff must file an amended complaint within 21 days.

**IT IS SO ORDERED.**

Dated: February 29, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge