UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DELINA FERRETTI, ) | Case No.: 11-CV-04486 |
| ) | |
| Plaintiff, ) | |
| ) | ORDER GRANTING MOTION TO |
| v. ) | DISMISS FIRST AMENDED |
| ) | COMPLAINT |
| PFIZER INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Before the Court is Defendant Pfizer Inc.'s Motion to Dismiss Plaintiff Delina Ferritti's ("Plaintiff") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion at"). ECF No. 32. Pursuant to Civil Local Rule 7–1(b), the Court found this motion appropriate for determination without oral argument. Accordingly, the hearing on the motion set for August 9, 2012, was vacated. Having considered the parties' submissions and the relevant case law, the Court GRANTS Defendant's Motion at to Dismiss.

**I.    Factual Background**

The following facts are taken from the First Amended Complaint ("FAC") and are assumed to be true for purposes of the instant motion. ECF No. 31. From April 2008 to September 16, 2010, Plaintiff Delina Ferretti ("Plaintiff") was employed as Director—Oncology for Pfizer Inc. ("Defendant"), a global research-based pharmaceutical company. FAC ¶¶ 4, 8. In this role, she

1  served as "the Lead Clinical Protocol Manager[] [and was] responsible for handling clinical operations for particular molecules." *Id.* ¶ 4. Her duties at Pfizer included, among other things, "overseeing data review performed by study managers and other team members for quality and training." *Id.* ¶ 6.

During her first year at Pfizer, Plaintiff worked primarily on the PanHER program, which was directed toward the clinical testing of PF–0299804, a molecule with promise as a cancer inhibitor drug. *Id.* ¶ 22.

In October or November 2008, Plaintiff noticed problems with the data related to the PanHER Phase I studies. *Id.* ¶ 25. Plaintiff, along with other Clinical Project Managers and study managers, reviewed the Phase 1 A5481001 study data. *Id.* Plaintiff "collated and highlighted all out-of-range clinical data, including electrocardiogram changes, prohibited medications, [and] all clinical changes from baseline…." *Id.* Plaintiff alleges that "[i]n particular, there were over 200 incidences of Phase I study participants using prohibited medications, which can interfere with the test results and put the participants at risk. In addition, there were many instances of adverse events and changes from baseline that went unreported in the Investigator's Brochure and to the FDA, in violation of 21 C.F.R. sections 312.23(a)(5), 312.32, and 312.55." *Id.* Two of the Clinical Project Managers who investigated the data agreed that the data was "extremely 'dirty'" and questionable. *Id.* ¶ 26.

Plaintiff immediately reported the abnormal Phase I study results to her supervisor, Bridget Rohmiller. *Id.* ¶ 27. "Plaintiff advised her superiors that the Phase I results should be thrown out because, *inter alia,* a majority of the individuals upon whom the drug was being tested were using medications prohibited under the study protocol. Because the prohibited medications could affect the test results, Plaintiff reported that she believed the study needed to be redone and that she could not in good conscience conduct Phase III testing on the product. Plaintiff, therefore, urged her supervisor, colleagues, and the Medical Monitor to redo the Phase I studies." *Id.* ¶ 1.

Plaintiff alleges that after the conclusion of Phase I trials, a Clinical Study Report ("CSR") is mandated to be written and provided to the FDA. *Id.* ¶ 29. To date, Defendant has not written a CSR for the Phase I PanHER trials. *Id.* In addition, the annual update of the Investigator's

2

Brochure mandated by the FDA to document new findings did not contain the issues of concern identified by Plaintiff and the other reviewers and colleagues. *Id.*

In or about February 2009, Plaintiff prepared a list of prohibited medications, which she provided to Dr. Louis Denis, the Director of Clinical Research for Pfizer Oncology. *Id.* ¶¶ 23, 30. However, Dr. Denis refused to disseminate this information to the investigators and study sites, and issued a directive to Plaintiff to rescind any information previously sent. *Id.* ¶ 30.

Plaintiff alleges that Pfizer "refused to do anything about the 'dirty' study results." *Id.* ¶ 31. Plaintiff claims that after reporting the defects in the Phase I trials, she was subjected to a hostile work environment which included being "vilified and disregarded," being "shut out" of certain meetings and being forced to run other meetings without having sufficient time to prepare for them. *Id.*

In response to what Plaintiff perceived as a hostile working environment, and because of Defendant's unwillingness to remedy the defects in the study, Plaintiff asked to be transferred from the PanHER program in April 2009. *Id*. ¶ 32. This request was granted, and Plaintiff was placed under a new supervisor, Ms. Rashmi Gandhi. *Id*.

Plaintiff alleges that under the supervision of Ms. Gandhi, Plaintiff was further subjected to "overt bias and unprofessional behavior." *Id.* ¶ 33. Specifically, Plaintiff's workload increased dramatically, and Ms. Gandhi refused to provide to Plaintiff the following: travel authorization for Plaintiff to meet with her team in person; a new, properly functioning computer; and reimbursement for job-related expenses, as previously authorized by Ms. Rohmiller. *Id.*

In or about December 2009, Plaintiff received a Performance Cycle Manager Review, which Plaintiff alleges was "subjective, unsupported, and contain[ing] false and misleading information." *Id.* ¶ 34. In response to the review, Plaintiff noted that "she had asked to be transferred from the PanHER team because of her 'concerns about [good clinical practice], questionable data, clinical team inexperience, the takeover of Clinical Operation by the [Project Manager, Carole Klingerman,] and clinician, combined with retaliation by these team members when presented with serious issues.' " *Id.*

In or about March 2010, Plaintiff reported her concerns about study safety, unreported

adverse events, and the lack of a Clinical Study Report to the Pfizer Compliance Hotline. *Id.* ¶ 35. Plaintiff also complained about the alleged retaliatory actions that had been taken against her and the alleged hostile work environment to which she was being subjected. *Id.* She also filed a complaint against Ms. Gandhi. *Id.* In response, Pfizer assigned Plaintiff to another supervisor, Ms. Stuart–Smith. *Id.*

In Plaintiff's April 28, 2010 Performance Improvement Plan ("PIP"), Ms. Stuart–Smith noted that Plaintiff needed to improve her "follow through/accountability and communication." *Id.* ¶ 36. Plaintiff responded to and refuted each of these charges. *Id.* Plaintiff's July 7, 2010 PIP reiterated the need for Plaintiff to improve in "follow through/accountability" and communication. *Id.* ¶ 37. Plaintiff again responded to and refuted each charge. *Id.* Finally, on or about August 19, 2010, Defendant sent Plaintiff notice of her termination. *Id.* ¶ 38. Plaintiff's date of termination was September 16, 2010. *Id.*

## II. Procedural Background

On September 9, 2011, Plaintiff filed a complaint alleging: (1) violation of California's Whistleblower Protection Act I (California Labor Code Section 1102.5); (2) wrongful termination in violation of public policy based on California Labor Code Section 1102.5 and California Labor Code Section 6310(b); (3) intentional infliction of emotional distress ("IIED"); (4) breach of express or implied contract; and (5) breach of implied covenant of good faith and fair dealing. ECF No. 1. The case was reassigned to the undersigned judge on October 25, 2011. ECF No. 12.

On April 3, 2012, Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f). ECF No. 14. Specifically, Defendant moved to dismiss Plaintiff's claims for: (1) retaliation pursuant to California Labor Code Section 1102.5(c); (2) wrongful termination in violation of public policy; and (3) intentional infliction of emotional distress ("IIED"). *Id.* Defendant also moved to strike Plaintiff's request for attorneys' fees. *Id.*

In an order dated February 29, 2012, the Court granted Defendant's Motion to Dismiss with respect to Plaintiff's claim for retaliation pursuant to California Labor Code Section 1102.5(c) on the ground that Plaintiff failed to exhaust her administrative remedies, as is required to bring a

4

Case No.: 11-CV-04486
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  Section 1102.5 claim, and also did not allege that any of the exceptions to the exhaustion
2  requirement applied. *See* ECF No. 26 ("February Order at") at 8. The Court also granted
3  Defendant's motion with respect to Plaintiff's claim for wrongful termination in violation of public
4  policy, to the extent such claim was based on California Labor Code Section 6310(b). *Id. at 15*.
5  The Court held that Plaintiff failed to allege facts showing she reported *working conditions* that she
6  believed to be unsafe. *Id*. Defendant's motion to dismiss Plaintiff's IIED claim was also granted
7  due to Plaintiff's failure to allege facts showing she suffered severe emotional distress. *Id*. at 15-
8  16. Defendant's Motion to Dismiss was denied with respect to Plaintiff's wrongful termination
9  claim to the extent this claim was based on a violation of Labor Code Section 1102.5(c). *Id.* at 14.
10  Defendant's Motion to Strike was denied. *Id*. The Court granted leave to amend with respect to
11  each of the dismissed claims. *Id.* at 16. Plaintiff was ordered to file an amended complaint within
12  21 days. *Id.*

13  On March 22, 2012, Plaintiff filed the FAC. Plaintiff's first cause of action for violation of California Labor Code Section 1102.5(c) was amended to include three new paragraphs. FAC ¶¶ 46-48. In these paragraphs Plaintiff alleges: (1) that under California Labor Code Section 98.7, the decision to file a complaint with the Department of Labor Standard Enforcement ("DLSE") is permissive, *id.* ¶ 46; (2) that the DLSE has taken the position that exhaustion of remedies under Labor Code Section 98.7 is not required prior to filing a civil action, *id.* ¶ 47; and (3) that she should be excused from exhausting her administrative remedies because her case falls within two exceptions to the exhaustion requirement. *Id.* ¶ 48.

Plaintiff amended her second cause of action for wrongful termination in violation of a public policy to allege that the use of prohibited medications by Phase I participants "put the participants at risk." *Id.* ¶ 52. Plaintiff also added an allegation that "Defendant's failure to properly conduct the trials increased the health risks associated with further testing…." *Id*.

With respect to Plaintiff's third cause of action for IIED, the FAC includes additional allegations regarding the nature of Plaintiff's emotional distress. Specifically, Plaintiff alleges that her symptoms include "anger, stress, and sleeplessness" and that she has "become isolated and withdrawn." *Id.* ¶ 59.

5
Case No.: 11-CV-04486
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant filed the instant Motion on April 3, 2012.  Plaintiff filed her Opposition at on April 24, 2012.  ECF No. 35.  Defendant filed its Reply at on May 8, 2012.  ECF No. 40.

III. **Legal Standards**

    **A.**     **Motion to Dismiss Under Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001).  Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988)[1].  While " 'detailed factual allegations' " are not required, a complaint must include sufficient facts to " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007) ).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to Plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir.2008).  The Court need not, however, accept as true pleadings that are no more than legal conclusions or the " 'formulaic recitation of the elements' of a cause of action." *Iqbal,* 129 S.Ct. at 1951 (quoting *Twombly,* 550 U.S. at 555).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996); *accord Iqbal,* 129 S.Ct. at 1949–50.

    **B.**     **Leave to Amend Under Rule 15(a)**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

---

[1] As recognized in *Reed v. Lowe*, *Balisteri* has been overruled "to the extent that it followed the rule that, '[a] complaint should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' '." *Reed*, No. CV 10–5783, 2012 WL 1460588, at *2 n. 2 (C.D. Cal. Mar. 16, 2012)

decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal quotation marks and alterations omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment.' " *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892–93 (9th Cir.2010) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)) (alterations in original). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.' " *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir.2009) (quoting *In re Read–Rite Corp.,* 335 F.3d 843, 845 (9th Cir.2003)). Indeed, repeated failure to cure a complaint's deficiencies by previous amendment is reason enough to deny leave to amend. *Abagninin v. AMVAC Chem. Corp.,* 545 F.3d 733, 742 (9th Cir.2008) (citing *Foman,* 371 U.S. at 182; *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir.1990)).

**IV.     Discussion**

In the instant motion, Defendant moves to dismiss Plaintiff's claims for: (1) retaliation pursuant to California Labor Code Section 1102.5(c); (2) wrongful termination in violation of public policy based on California Labor Code Section 6310(b); and (3) intentional infliction of emotional distress ("IIED").[2] The Court addresses each of these issues in turn.

**A.     Violation of California Whistleblower Protection Act**

Plaintiff's first cause of action alleges a violation of California's Whistleblower Protection Act (California Labor Code Section 1102.5(c)). The Court previously dismissed Plaintiff's claim because she failed to allege that she exhausted her administrative remedies, as is required to bring a claim based on the statute. *See* February Order at 8:8-10. The Court also held that Plaintiff failed

---

[2] Defendant also moved to dismiss on the ground that Plaintiff's FAC was filed one day late. Motion at 5:2-15. However, after Defendant's Motion was filed, Plaintiff filed a motion requesting that the Court excuse Plaintiff's late filing of the FAC. ECF No. 36. Defendant filed a statement of non-opposition in response to this motion. ECF No. 41. The Court subsequently granted Plaintiff's motion and extended Plaintiff's time to file the FAC. ECF No. 43. Accordingly, Defendant's Motion to Dismiss Plaintiff's FAC as untimely is dismissed as moot.

7
Case No.: 11-CV-04486
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   to allege that any of the exceptions to the exhaustion requirement applied to her case. *Id.* at 7:11-
2   12. Defendant contends that Plaintiff's FAC fails to correct these deficiencies. Motion at 8:7-8.
3   The Court agrees.

4   Section 1102.5 is a "whistle-blower" protection statute. *See* Cal. Lab.Code § 1102.5(c). It
5   provides that: "An employer may not retaliate against an employee for refusing to participate in an
6   activity that would result in a violation of state or federal statute, or a violation or noncompliance
7   with a state or federal rule or regulation." *Id*. Pursuant to California Labor Code Section 98.7, an
8   employee who believes she has been discharged or otherwise discriminated against in violation of
9   Section 1102.5 may file a complaint with the Division of Labor Standards Enforcement ("DLSE")
10  within six months after the occurrence of the violation.

11  As set forth in more detail in the February Order, a plaintiff wishing to pursue a civil action
12  based on a violation of Section 1102.5 is first required to exhaust her administrative remedies by
13  filing a complaint with the DLSE pursuant to Section 98.7. *See* February Order at 6; *Campbell v.*
14  *Regents of Univ. of Cal.,* 35 Cal.4th 311, 321, 25 Cal.Rptr.3d 320 (2005) ("[T]he rule is that where
15  an administrative remedy is provided by statute, relief must be sought from the administrative body
16  and this remedy exhausted before the courts will act."). Courts have, however, recognized that
17  there are exceptions to the exhaustion requirement. *See Campell*, 35 Cal. 4th at 322. For example,
18  a plaintiff may be excused from pursuing her administrative remedies where the "subject of the
19  controversy lies outside the agency's jurisdiction." *Id.* Similarly, a plaintiff may be excused
20  "when pursuit of an administrative remedy would result in irreparable harm…." *Edgren v. Regents*
21  *of Univ. of Cal.*, 158 Cal. App. 3d 515, 520, 205 Cal. Rptr. 6 (1984).

22  Plaintiff has not amended her complaint to allege that she exhausted her administrative
23  remedies. Indeed, she concedes that she has not. Opposition at 9:3-4. Rather, Plaintiff now
24  alleges that her failure to exhaust her administrative remedies is excusable under two exceptions to
25  the exhaustion requirement: (1) the exception for cases where the administrative agency cannot
26  provide an adequate remedy; and (2) the exception for cases where the aggrieved party can
27  positively state what the administrative agency's decision would be in her case. FAC ¶ 48;
28  Opposition at 9:4-11.

8

Case No.: 11-CV-04486
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff alleges that these exceptions apply for three reasons. First, Plaintiff alleges that she should be excused from the exhaustion requirement because, under Section 98.7, the decision to file a complaint with the Labor Commissioner is permissive and because the DLSE has taken the position that exhaustion of remedies under Section 98.7 is not required prior to filing a civil action. *See* FAC ¶¶ 46-47; Opposition at 9:12-14. Second, Plaintiff alleges that DLSE proceedings under Labor Code Section 98.7 are not quasi-judicial in nature and therefore cannot be reviewed by administrative mandate. A writ of administrative mandate under California Code of Civil Procedure Section 1094.5 is a means by which a California Superior Court may review a decision by an administrative body. *See Bollengeier*, 222 Cal. App. at 1123. Third, Plaintiff alleges a favorable decision by the DLSE would result in the DLSE bringing a civil action on Plaintiff's behalf, and Plaintiff is already prepared to bring such an action on her own. FAC ¶ 48. These allegations fail to show that either of the aforementioned exceptions applies.

Plaintiff's first allegation regarding the DLSE's position on the exhaustion requirement is unpersuasive and does not fall into either exception to the exhaustion requirement. Moreover, this Court has already held that, under California law, a Plaintiff must exhaust her administrative remedies prior to pursuing an action for retaliation in violation of California Labor Code Section 1102.5. February Order at 7:7-9. In reaching this conclusion, the Court considered the text of Section 98.7. *Id.* at 6:22-25. Furthermore, Plaintiff draws her allegation from *Creighton v. City of Livingston ("Creighton II")*, but this Court previously found that *Creighton II's* reasoning was flawed. February Order at 7:13-24; *see also Creighton II*, No. CV-F-08-1507, 2009 WL 3246825, at *4 (E.D. Cal. Oct. 7 2009) (reprinting and discussing a 2007 letter from James W. Johnston (the "Johnston Letter"), an attorney from the Labor Commissioner, regarding the agency's position on the exhaustion requirement). While the Court respects the DLSE's position on this matter, the DLSE's opinion is not binding on the Court and will not serve to excuse Plaintiff's failure to exhaust her remedies.[3]

---

[3] In support of Plaintiff's Opposition, Plaintiff also submitted a declaration from one of her attorneys, Robert J. Schwartz. The declaration attaches a letter, dated March 13, 2012, from Ethera Clemons, Assistant Chief, DLSE. ECF No. 36-1, Exh. A. In this letter, Ms. Clemons repeats the DLSE's position that plaintiffs are not required to exhaust their administrative remedies prior to pursuing a civil action. *Id.* Defendant objects to and moves to strike Ms. Clemon's letter, *inter*

9

Case No.: 11-CV-04486
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    Plaintiff's allegation regarding the unavailability of review by administrative mandate also
2    fails to show that Plaintiff should be excused from exhausting her administrative remedies.
3    Plaintiff does not identify which exhaustion requirement exception is triggered by this allegation.
4    However, The Court surmises that Plaintiff is alleging that because the DLSE proceedings are not
5    reviewable by administrative mandate, the proceedings are inadequate. Thus, Plaintiff's case falls
6    into the exception for cases where the administrative proceedings will provide an inadequate
7    remedy.

8    As an initial matter, the Court notes that it accepts Plaintiff's assertion that a decision by the
9    DLSE is not reviewable by administrative mandate only for the purposes of resolving this Motion.
10   This allegation appears to be based solely on statements made in the 2007 letter from James W.
11   Johnston as reprinted in *Creigton II*, 2009 WL 3246825, at *4. Plaintiff fails to cite, and the Court
12   is unaware of, any other authority supporting this proposition. In any event, even accepting the
13   proposition that the DLSE's decision is not reviewable by administrative mandate, Plaintiff's
14   allegation fails to show that the inadequate remedy exception applies.

15   In order for the inadequate remedy exception to apply, Plaintiff must allege facts showing
16   that "the [Labor Commissioner] lacks authority to hear the complaint," *Campell*, 35 Cal. 4th at
17   323, or that the commission cannot "afford… [her] fair procedure rights." *Bollengeier v. Doctors*
18   *Medical Center*, 222 Cal. App. 3d 1115, 1128, 272 Cal. Rptr. 273 (1990). "[F]air procedure
19   requires[,] [at a minimum,] adequate notice of the administrative action proposed or taken… and a
20   reasonable opportunity to be heard." *Id*. at 1129.

21   Here, Plaintiff does not allege that the DLSE proceedings under Section 98.7 would not
22   afford her a "reasonable opportunity to be heard." *Bollengeier*, 222 Cal. App. 3d at 1129. Rather
23   she alleges that the DLSE proceedings are inadequate because the agency's decision would not be
24   reviewable by writ of administrative mandate. FAC ¶ 48. Plaintiff, however, fails to cite any
25   authority for the proposition that the unavailability of review by writ of administrative mandate

---

27   *alia*, on the grounds that the letter is hearsay and that this Court should not be "bound by the
     DLSE's position on the requirement to exhaust administrative remedies." ECF No. 40-2. The
28   Court declines to strike the letter; however, as set forth *supra*, the Court agrees that it is not bound
     by the DLSE's position.

10

Case No.: 11-CV-04486
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   means her administrative remedies are inadequate. Accordingly, this argument is rejected. *Cf.*

2   *Bollengeier*, 222 Cal. App. 3d at 1129 (rejecting petitioner cardiothoracic surgeon's assertion that

3   no adequate remedy was provided because defendant hospital's by-laws did not provide for

4   interlocutory review of the procedural validity of the charges against him).[4]

5         Plaintiff's allegation that she should be excused from exhausting her administrative

6   remedies because a positive finding by the Labor Commissioner would result in the DLSE bringing

7   a civil action on her behalf, which she is "ready and able" to do on her own, also fails. FAC ¶ 48.

8   The Court surmises that this allegation is meant to show that Plaintiff's case falls within the

9   exception for cases where a party can positively state what the administrative agency's decision

10  would be in the party's case. Opposition at 9:8-9. This exception is sometimes referred to as the

11  "futility exception." *Bollengeier*, 222 Cal. App. 3d at 1126.

12        Courts have cautioned that the futility exception is a "narrow exception" to the

13  administrative exhaustion requirement. *Bollengeier*, 222 Cal. App. 3d at 1130. In order for this

14  exception to apply, the agency must have already "declared what its ruling will be" in a plaintiff's

15  case. *Id*. Plaintiff's allegation that she is ready and able to bring suit on her own (thus obviating

16  the need for proceedings before the DLSE) fails because Plaintiff has not alleged that the Labor

17  Commissioner has actually declared that he would rule in Plaintiff's favor. *See Bollengeier*, 222

18  Cal. App. 3d at 1130 (holding that the futility exception applies where the agency has "declared

19  what its ruling will be in [the] particular case…."). Moreover, as recognized in *Edgren*, "even if…

20  ultimate resort to the courts is inevitable, the prior administrative proceeding will still promote

21  judicial efficiency by unearthing the relevant evidence and by providing a record which the court

22  may review." *Edgren*, 158 Cal. App. 3d at 521-22.

23        For the reasons set forth above, Defendant's Motion to Dismiss is granted with respect to

24  Plaintiff's first cause of action. The Court previously dismissed with leave to amend this cause of

---

[4] The Court also notes that, regardless of whether the DLSE's decision would be reviewable by administrative mandate under California Code of Civil Procedure Section 1094.5, following a dismissal by the Labor Commissioner, Plaintiff can seek court review of her case through a civil action. *See* Cal Lab Code § 98.7 ("The complainant may, after notification of the Labor Commissioner's determination to dismiss a complaint, bring an action in an appropriate court, which shall have jurisdiction to determine whether a violation occurred, and if so, to restrain the violation and order all appropriate relief to remedy the violation.")

11
Case No.: 11-CV-04486
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

action because of Plaintiff's failure to exhaust her administrative remedies. Plaintiff's FAC fails to cure this deficiency. Accordingly, the Court dismisses Plaintiff's first cause of action without leave to amend. *See Zucco Partners,* 552 F.3d at 1007 (dismissing plaintiff's complaint without leave to amend because plaintiff failed to cure deficiencies identified in earlier iteration of complaint).

### B. Wrongful Termination in Violation of California Public Policy Based on California Labor Code Section 6310(b)

Plaintiff's second cause of action for wrongful termination in violation of public policy based on California Labor Code Section 6310(b) was previously dismissed because Plaintiff failed to allege that she reported an unsafe working condition. February Order at 15:3-4. Plaintiff has amended her complaint to allege that the use of prohibited medications by study participants "increased the health risks associated with further testing of the drug" and "threatened material harm both to the study participants and Defendant." FAC ¶ 52. Defendant contends that these amendments fail to cure the deficiencies in Plaintiff's complaint. Motion at 9:7-10. The Court agrees.

California Labor Code Section 6310(b) provides that "[a]ny employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint… of unsafe working conditions, or work practices, in his or her employment or place of employment… shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

Plaintiff contends that she has adequately pled a cause of action for wrongful termination in violation of public policy based on California Labor Code Section 6310(b) because she has alleged facts showing Defendant's conduct "threatened material harm both to study participants and Defendant" by "increase[ing] the health risks associated with further testing of the drug." FAC ¶ 52; Opposition at 10:7-11. Plaintiff asserts that her allegations of a risk to study participants are sufficient to state a violation of Section 6310(b) because the statute was meant to "protect[] employees from retaliation for reporting unsafe work practices" and should be "liberally construed

12
Case No.: 11-CV-04486
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  to encompass Plaintiff's reports of health risks to study participants and Defendant…." *Id.* at 11:2-
2  7. In support of this assertion, Plaintiff cites to *Daly v. Exxon Corp.* 55 Cal. App. 4th 39, 44, 63
3  Cal. Rptr. 2d 727 (1997). Opposition at 11:2-5. Specifically, Plaintiff cites to the *Daly* Court's
4  statement that Section 6310(b) is "remedial legislation which must be liberally construed…." *Id*.
5  Plaintiff's reliance on *Daly* is misplaced.

6  In *Daly*, the Court rejected a Defendant's attempt to avoid liability under Section 6310 for
7  retaliating against plaintiff employee after she complained about unsafe working conditions, by
8  arguing that it did not terminate plaintiff but rather "simply let [her] contract expire." *Daly*, 55 Cal.
9  App. 4th at 43-44. The Court held that Section 6310 should be "liberally construed to effectuate its
10 object and purpose…." *Id.* Permitting an employer to avoid liability under Section 6310(b) by not
11 renewing an employee's contract after she complains of unsafe working conditions, as opposed to
12 by affirmatively terminating her, "would violate the spirit… [of] [S]ection 6310…." *Id*.
13 Accordingly, the *Daly* Court denied defendant's motion to dismiss plaintiff's claim.

14 Nothing in *Daly* suggests that Section 6310(b) should be extended to include situations
15 where an employee reports a health risk that threatens harm to non-employee, study participants
16 (much less that the statute should be extended to cover undefined harm to a corporation stemming
17 from health risks affecting non-employees). Indeed, at least one court has explicitly rejected the
18 contention that Section 6310 should be broadly construed to permit claims based on allegations of
19 a health risk posed to non-employees. *See Creighton v. City of Livingston* ("*Creighton I*"), 628 F.
20 Supp. 2d 1199, 1223 (E.D. Cal. 2009) (granting summary judgment on Section 6310 claim because
21 allegations that "contaminated water posed a public health risk… [did] not satisfy § 6310's
22 requirement that the *employee* complain of unsafe working conditions or an unsafe workplace").[5]

23 Additionally, other provisions of the California Occupational Safety and Health Act of
24 1973 ("OSHA"), of which Section 6310 is a part, counsel against expanding the definition of the

---

[5] The complaint in *Creighton* was later amended to allege that plaintiff was fired in part because Defendant believed plaintiff might complain that the unsafe water conditions posed a risk to both the community *and* Defendant's employees "while those employees worked in Livingston-owned buildings…." *See Creighton II*, 2009 WL 3246825 at *14, 16. The *Creighton II* court held that such allegations were sufficient to state a cause of action under Section 6310(b). *Id.* at *16. In this case, it is unlikely that Plaintiff could plausibly amend her Complaint to allege that the use of prohibited medications by *study participants* could pose a health risk to Defendant's employees.

term unsafe working conditions to include conditions that only create a health risk to non-employee, study participants. *Daly*, 55 Cal. App. 4th at 44. As Defendant correctly notes, OSHA was enacted for the purpose of assuring safe and healthful working conditions for California's "*working* men and women." Reply at 4:17-18 (emphasis added) (*quoting* Cal. Labor Code § 6300). Further, California Labor Code Section 6306(a) provides that " '[s]afe,' 'safety,' and 'health'… mean such freedom from danger to the life, safety, or health of *employees*…." *Id.* (emphasis added). These statutory provisions support the view that Section 6310(b) was meant to apply to unsafe working conditions affecting employees as opposed to those that affect only third-parties.

In light of *Creighton I* and the aforementioned statutory provisions, the Court concludes that, in order to state a claim based on Section 6310(b), Plaintiff must allege facts showing that the allegedly unsafe working condition threatened employee health or safety. Here, Plaintiff alleges that the use of prohibited medications -- the purported unsafe working condition -- "threatened material harm to study participants and" Pfizer, a corporate entity. FAC ¶ 52. She does not allege that she or Pfizer's employees were affected. Accordingly, Plaintiff's claim for wrongful termination based on a violation of Section 6310(b) must be dismissed. *See Creighton I*, 628 F. Supp. 2d at 1223.

The Court previously dismissed this claim with leave to amend because of Plaintiff's failure to allege that she reported an unsafe working condition. Plaintiff's FAC fails to cure this deficiency. The Court, therefore, dismisses Plaintiff's claim without leave to amend. *See Zucco Partners,* 552 F.3d at 1007 (dismissing plaintiff's complaint without leave to amend because plaintiff failed to cure deficiencies identified in earlier iteration of complaint).

**C.     Intentional Infliction of Emotional Distress ("IIED")**

Plaintiff's third cause of action alleges a claim for intentional infliction of emotional distress. Under California law, the tort of IIED comprises three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's

1   outrageous conduct." *McGough v. Wells Fargo Bank, No*. C12-0050, 2012 WL 2277931, at *7

2   (N.D. Cal. June 18, 2012).

3   Plaintiff's claim was previously dismissed because she failed to allege facts showing she suffered severe emotional distress.  February Order at 15:22-25.  Plaintiff has since amended her complaint to allege she suffered severe emotional distress which caused her to experience "anger, stress, and sleeplessness" and to become "isolated and withdrawn."  FAC ¶ 59.

Defendant moves to dismiss this claim on the grounds that: (1) the claim is preempted by the California Workers' Compensation Act, Labor Code Section 3200 *et seq*.; (2) Plaintiff has not alleged extreme and outrageous conduct; and (3) Plaintiff has not alleged severe emotional distress. Motion at 10:9-14.  The Court concludes that Plaintiff's claim is preempted by the California Workers' Compensation Act.  Because the Court holds that Plaintiff's claim is preempted, the Court need not and does not reach the issues of whether Plaintiff's additional allegations show she suffered severe emotional distress or whether Defendant's conduct qualifies as extreme and outrageous.

The Workers' Compensation Act provides the exclusive remedy for injuries sustained in connection with "actions that are a normal part of the employment relationship." *Singh v. Southland Stone, U.S.A., Inc.*, 186 Cal. App. 4th 338, 367, 112 Cal. Rptr. 3d 455 (2010) (*citing Cole v. Fair Oaks Fire Protection District*, 43 Cal. 3d 148, 160, 233 Cal. Rptr. 308 (1987)).  These actions include "demotions, promotions, [and] criticism of work practices…" *Cole*, 43 Cal. 3d at 160.  Such actions fall within the scope of the Workers Compensation Act regardless of whether they can "be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.' " *Singh*, 186 Cal. App. 4th at 367.  Accordingly, an IIED claim based on emotional injuries sustained "in connection with actions that are a normal part of the employment relationship" will ordinarily be preempted.  *Id.* (granting defendant's motion for judgment notwithstanding the pleadings on IIED claim where plaintiff alleged that he had been berated, humiliated, criticized, and insulted with profanities).

Defendant contends that Plaintiff's IIED claim is preempted by the California Workers' Compensation Act because the conduct forming the basis for her IIED claim -- *i.e.* Defendant's

15

1   employees' criticism of Plaintiff's job performance, requiring Plaintiff to meet unrealistic goals,
2   and eventually terminating her -- "arose… in the normal course of the employment relationship."
3   Motion at 14:11-17.  Plaintiff counters that her claim should not be preempted because Defendant's
4   conduct in retaliating against her and ultimately terminating her for reporting what she believed to
5   be unlawful and unethical conduct in connection with the clinical testing of PF-0299804
6   contravened the fundamental public policies reflected in California Labor Code Sections 1102.5(c)
7   and 6310(b).  Opposition at 13:3-12.  Plaintiff asserts that Defendant's conduct that violates
8   fundamental public policy does not arise in the normal course of the employment relationship.  *Id.*
9   at 12:25-27.

10   In support of this contention, Plaintiff cites the California Court of Appeal's decision in
11   *Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*, 68 Cal.App.4th 101, 80 Cal.Rptr.2d 60 (1998).
12   The *Cabesuela* Court held that plaintiff truck driver's IIED claim was not preempted where it was
13   based on allegations that he had been terminated for expressing concerns that his employer's
14   decision to extend working hours created an unsafe working condition under California Labor
15   Code Section 6310.  *Id.* at 112-13.  The *Cabesuela* Court reasoned that "when an employer's
16   decision to discharge an employee results from an animus that violates fundamental policy, such
17   misconduct cannot be considered a normal part of the employment relationship."  *Id*.  The
18   *Cabesuela* Court held that because plaintiff's IIED claim was "premised upon his employer's
19   violation of a fundamental public policy" (*i.e.* his employer's decision to terminate him in violation
20   of Section 6310), his claim was not preempted by the Act.  *Id*.

21   Plaintiff's reliance on *Cabesuela* is misplaced.  Since *Cabesuela* was decided in 1998, the
22   California Supreme Court has held that an IIED claim is preempted even where it is based on
23   conduct that violates a fundamental public policy.  *See Miklosy v. The Regents of the Univ. of Cal.*,
24   44 Cal. 4th 876, 902-3 (2008).  In *Miklosy*, the California Supreme Court dismissed plaintiff's
25   IIED claim despite the fact that it was based on the same allegations as plaintiff's claims for
26   whistleblower retaliation and wrongful termination in violation of a public policy.  *Id.* at 903.
27   While, the *Miklosy* Court recognized that there are exceptions to the preemption rule for "conduct
28   that 'contravenes fundamental public policy'… [and] conduct that 'exceeds the risks inherent in the

16
Case No.: 11-CV-04486
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

employment relationship'," it concluded that neither exception applied to plaintiff's IIED claim. *Id.* at 902-3. The *Miklosy* Court reasoned that the first exception was inapplicable because it was meant to permit actions for wrongful termination in violation of a public policy (and not IIED claims). *See Miklosy*, 44 Cal. 4th at 902-3. With respect to the second exception, citing *Shoemaker v. Myers*, the *Miklosy* Court held that the alleged misconduct, including plaintiff's allegations of "whistleblower retaliation," "occurred at the worksite, in the normal course of the employer-employee relationship" and, thus, did not exceed the "risk[s] inherent in the employment relationship." *Miklosy*, 44 Cal. 4th at 902-3 (*citing Shoemaker*, 52 Cal.3d 1, 9, 276 Cal. Rptr. 303 (1990)).

In the instant case, Plaintiff's IIED claim alleges that she suffered severe emotional distress after she was "subjected to harassment, retaliation, threats, and termination for reporting what she in good faith believed to be unlawful and unethical conduct by Defendant." FAC ¶ 57. Under *Miklosy*, an IIED claim based on such conduct does not qualify under either exception to the preemption rule. *See Id.*, 44 Cal. 4th at 902-3. Accordingly, this Court dismisses Plaintiff's IIED claim. Dismissal is granted without leave to amend because Plaintiff is unlikely to be able to amend her IIED claim to allege conduct that did not occur in the normal course of the employment relationship.

## V. Conclusion

For the foregoing reasons, Defendant's Rule 12(b)(6) motion to dismiss is GRANTED, without leave to amend, as to the following claims: retaliation under California Labor Code Section 1102.5(c); wrongful termination in violation of public policy predicated on a violation of California Labor Code Section 6310(b); and intentional infliction of emotional distress.

**IT IS SO ORDERED.**

Dated: August 22, 2012   _____
LUCY H. KOH
United States District Judge